ALMON, Justice.
This is an appeal from a summary judgment wherein the trial court decreed that as a matter of law an illegitimate child (the appellant) could not take under the last will of Horace J. Lamar. Appellant contends that whether she was intended to be included in Horace Lamar’s will is a question of fact.
Appellees, consisting of both plaintiffs and defendants, are heirs of Horace J. Lamar. The plaintiffs in this case had filed suit to sell for division a parcel of real estate apparently descending by will from Horace J. Lamar; the interest of the plaintiffs in the property cannot be established from the record. Appellant was joined as a defendant below.
The pleadings — one set of interrogatories, and an affidavit by the mother of appellant — establish the following: Horace J. Lamar was born in 1885; the record does not disclose his date of death. Between 1911 and 1924 four children were born to Horace and his wife, Ella L. Lamar. In 1946 Geneva Andrews gave birth to the appellant. By the affidavit of Geneva Andrews, the appellant’s father was Horace J. Lamar. The affidavit further states that Horace recognized the appellant as his daughter during his lifetime, provided partial support for her, and indicated a desire that the appellant should share his estate along with his other children. In 1949 Horace wrote his last will and testament leaving a life estate in all of his possessions to his wife, Ella L. Lamar, since deceased, with the remainder to “. . . my children, share and share alike . . (For an annotation on “Right of illegitimate children to take under testamentary gift to ‘children,’ ” see 34 A.L.R.2d 4.)
At common law an illegitimate child was heir neither to his mother nor his father “for, being nillius fillius, he is therefore of heir to nobody, and has no ancestor from whom any inheritable blood can be derived.” Lingen v. Lingen, 45 Ala. 410, 413 (1871). In Alabama we have declared by stature that the father of an illegitimate child has a duty to support the child (Tit. 27, § 12(1) et seq., Code of Alabama 1940, Recompiled 1945). We have provided a method for a father to legitimatize an illegitimate child (Tit. 27, §§ 10 and 11, 1973 Cum.Supp., Code, supra), and we have provided that an illegitimate child is heir to his mother (Tit. 16, § 7, Code, supra). These statutes are only of oblique interest, though, as a person may will property to illegitimate children; our task is to determine his intention. Dunlap v. Robinson, 28 Ala. 100 (1856).
In Williams v. Witherspoon, 171 Ala. 559, 561, 55 So. 132,133 (1911), this court stated: “It is settled law that, when the word ‘children’ is used in a statute, it means ‘legitimate children,’ unless the context broadens its meaning.” Similarly, in Tillery v. Tillery, 155 Ala. 495, 497, 46 So. 582 (1908), this court stated: “. . . ‘child,’ in the absence of any facts or circumstances indicating a different interpretation, carries with it the meaning of legitimate offspring.” See also Morgan Plan Company v. Bruce, 262 Ala. 314, 78 So.2d 650 (1955).
Scott v. Nelson, 3 Porter 452 (1836); considered whether the term “child” could include grandchildren:
“It is admitted, that the word children, does not ordinarily and properly speaking, comprehend grandchildren, or issue generally.
“There are two cases where it is permitted—
“1. From necessity — where the will would be inoperative, unless the sense is extended beyond its natural import: and,
“2. When the testator has shown, by other words, that he did not intend to use the word children in its proper actual meaning, but in a more extended sense.”
For cases following Scott, see Spencer v. Title Guarantee Loan & Trust Co., 222 Ala. 221, 132 So. 32 (1931), and Wilson v. Rand, 215 Ala. 159, 110 So. 3 (1926). The will in the instant case would not become inoperative should we exclude illegitimate children as Horace Lamar had four legitimate children. (See 34 A.L.R.2d 4, § 13.)
*43 Thus, we are left with this question: Does a question of fact arise where a testator, after leaving a life estate to his wife, leaves the remainder to “my children” as distinct from “our children” when he allegedly recognized and supported a then living illegitimate child? Is a latent ambiguity created so that the trial court should look beyond the contents of the instrument in determining the intent of the testator?
“. . . In a proper case of latent ambiguity, to determine that intention, courts will, not only look to the words of the will itself, but as far as possible determine from the evidence, or as nearly as may be done in the light of the whole record disclosing the circumstances of the testator, and put the court in 'the place of the testator, in order that there be a due consideration of the instrument as to how testator intended the properties devised or bequeathed to the several objects of bounty, or denied to those bearing relation that come within the purview of testator’s bounty. From such a position so advantaged courts may read and expound the will in accord with a testator’s true intention. Myrick v. Williamson, 190 Ala. 485, 67 So. 273; Steele v. Crute, 208 Ala. 2, 93 So. 694; 28 Alabama and Southern Digests, Wills, page 225, &wkey;441.” Wiley v. Murphree, 228 Ala. 64, 68, 151 So. 869, 872 (1934).
We conclude, contrary to the decision of the trial court, that the intent expressed by Horace Lamar in his 1949 will cannot be decided as a matter of law but rather should be treated as a question of fact. Rule 56, Alabama Rules of Civil Procedure.
The judgment in this cause is reversed and the cause is remanded to the lower court for further proceedings.
REVERSED AND REMANDED.
TORBERT, C. J., and BLOODWORTH, JONES and EMBRY, JJ., concur.